FILED
2015 MAR 20 PM 4:47
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ALFRED HENDERSON and<br>A&A FABRICATION AND<br>POLISHING, INC.,<br><br>        Defendants. | CR No. 15-CR 15 00136<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy;<br>41 U.S.C. §§ 8702, 8707:<br>Offering and Providing<br>Kickbacks; 18 U.S.C. § 2(b):<br>Causing an Act to be Done;<br>18 U.S.C § 1341: Mail Fraud;<br>18 U.S.C. § 1028A: Aggravated<br>Identity Theft; 18 U.S.C.<br>§ 981(a)(1)(C), 28 U.S.C.<br>§ 2461(c); and 21 U.S.C.<br>§ 982(a)(2)(A): Criminal<br>Forfeiture] |

    The Grand Jury charges:

A.    INTRODUCTORY ALLEGATIONS

    At all times relevant to this Indictment:

    1.    The Boeing Company ("Boeing") was a Delaware corporation with its headquarters and principal place of business in Seattle, Washington. Boeing's business included the research, development, manufacture, and sale of satellites. Boeing had contracts to sell satellites, satellite parts, and

other products to United States government agencies, including the Department of Defense, United States Air Force, National Aeronautical Space Administration, and United States National Reconnaissance Office.  Boeing Space and Intelligence Systems, Inc. ("BSIS") was a subsidiary of Boeing headquartered in Seal Beach, California, within the Central District of California.

2.   During all relevant times, Boeing and BSIS were "prime contractors," meaning that they entered into contracts with the United States government to provide supplies, materials, equipment, or services of any kind.

3.   BSIS employed Mark Allen ("Allen") as a procurement agent located in El Segundo, California, within the Central District of California.  Allen procured items and services from subcontractors used by BSIS for its contracts with the United States government and other customers.  Allen was supposed to use a competitive bidding process to find subcontractors, meaning that he would send requests for bids to various subcontractors; subcontractors would then submit bids for items and services to Allen; and Allen would then award purchase orders to the subcontractors with the best bids.

4.   Raymond Joseph ("Joseph") worked as an independent outside sales representative for numerous subcontractors that did business with BSIS, including defendant A&A FABRICATION AND POLISHING, INC. ("defendant A&A").

5.   Defendant A&A was a California corporation with facilities in Whittier, California and Montebello, California, which are both within the Central District of California.

Defendant A&A worked as a subcontractor for BSIS and supplied items required for contracts that BSIS had with various United States government agencies and commercial companies.

6. Defendant ALFRED HENDERSON ("defendant HENDERSON") controlled defendant A&A and was responsible for its day-to-day operations.

7. In or about August 2009, Boeing prohibited its subsidiaries, including BSIS, from doing business with defendant A&A due to work quality and performance issues.

8. Nace Sheet Metal Company ("Nace") was a sole proprietorship located in Anaheim, California, within the Central District of California. Nace's primary business was manufacturing office furniture.

9. Cesar Soto ("Soto") owned Nace and was responsible for its day-to-day operations.

10. Randy Mitchell ("Mitchell") was an employee of defendant A&A and responsible for quality control.

///
///

## COUNT ONE

[18 U.S.C. § 371]

### A. INTRODUCTORY ALLEGATIONS

11. The Grand Jury incorporates by reference and realleges paragraphs 1 through 10 of the Indictment as though set forth in their entirety here.

### B. OBJECT OF THE CONSPIRACY

12. Beginning in or about 2005, and continuing through in or about February 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants HENDERSON and A&A, together with Joseph, Allen, and others known and unknown to the Grand Jury, combined, conspired, and agreed with each other to knowingly and willfully provide, attempt to provide, and offer to provide kickbacks, in connection with prime contracts, subcontracts relating to prime contracts, and purchase orders relating to United States government contracts, in violation of Title 41, United States Code, Sections 8702 and 8707.

### C. THE MANNER AND MEANS OF THE CONSPIRACY

13. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

   a. Starting in or about 2005, Allen agreed to award BSIS purchase orders relating to Boeing's government contracts to subcontractors represented by Joseph, including defendant A&A, which agreed to pay him kickbacks through Joseph.

   b. Allen assisted defendant A&A in obtaining BSIS purchase orders by providing defendant HENDERSON and defendant

A&A with confidential information that gave defendant A&A an improper advantage in bidding on purchase orders.

  c. Defendant A&A, defendant HENDERSON, and Joseph submitted quotes to BSIS to produce and deliver specific products. Defendant A&A, defendant HENDERSON, and Joseph inflated the bids by the amount of the kickbacks to be paid to Allen.

  d. Allen awarded defendant A&A BSIS purchase orders.

  e. Defendant A&A delivered the products to BSIS.

  f. Defendant A&A sent invoices to BSIS in order to get paid for work under the purchase orders.

  g. At defendant Henderson's direction, defendant A&A paid a commission to Joseph and a kickback to Allen, which was paid through Joseph.

  h. Defendant A&A and defendant HENDERSON concealed the kickbacks paid to Allen through Joseph in a number of ways. Defendant A&A and defendant HENDERSON would make checks payable to cash, inflate Joseph's commission checks to cover the kickbacks Joseph was passing to Allen, and write checks to Joseph's family members, who would then provide that money to Joseph.

  i. Defendant A&A and defendant HENDERSON did not disclose to BSIS that defendant A&A was paying kickbacks to Allen through Joseph in exchange for BSIS contracts, and that Allen was giving defendant A&A confidential information that gave defendant A&A an improper advantage in bidding on purchase orders.

j.  Allen awarded defendant A&A approximately $4.5 million in BSIS purchase orders between 2005 and February 2012.

k.  As part of the conspiracy, defendant HENDERSON and defendant A&A paid approximately $650,000 to Joseph and approximately $100,000 to Allen.

D.  OVERT ACTS

14.  In furtherance of the conspiracy, and to accomplish its objects, defendants HENDERSON and A&A, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in Los Angeles County, within the Central District of California, and elsewhere:

Overt Act No. 1: On or about November 1, 2005, at defendant HENDERSON's direction, defendant A&A issued a check to "Cash" with a notation to "Mark Allen" in the memo line of the check.

Overt Act No. 2: On or about August 30, 2007, defendant A&A submitted an invoice to BSIS in the amount of $15,400 for the work completed under Purchase Order No. NNB8-909268, which related to a Boeing contract with the United States government.

Overt Act No. 3: On or about November 6, 2007, at defendant HENDERSON's direction, defendant A&A issued a check to Joseph in the amount of approximately $5,455, which included a kickback for Allen.

Overt Act No. 4: On or about April 6, 2009, Allen sent Joseph an email telling him what defendant HENDERSON needed to

bid in order to receive a BSIS purchase order relating to a Boeing contract with the United States government, which Joseph later communicated to defendant HENDERSON.

<u>Overt Act No. 5</u>: On or about November 18, 2011, at defendant HENDERSON's direction, defendant A&A issued a check to Joseph in the amount of approximately $3,648, which included a kickback for Allen.

<u>Overt Act No. 6</u>: On or about February 23, 2012, at defendant HENDERSON's direction, defendant A&A issued a check to Joseph in the amount of approximately $8,733, which included a kickback for Allen.

## COUNTS TWO THROUGH FIVE

[41 U.S.C. §§ 8702, 8707; 18 U.S.C. § 2(b)]

15. The Grand Jury incorporates by reference and realleges paragraphs 1 through 10 and paragraph 13 of the Indictment as though set forth in their entirety here.

16. On or about the dates set forth below, within the Central District of California and elsewhere, defendants HENDERSON and A&A, knowingly and willfully provided, attempted to provide, and offered to provide, and willfully caused to be provided and offered, kickbacks to Allen, an employee of Boeing, a prime contractor, through conduit payments to Joseph, in order to improperly obtain favorable treatment in connection with prime contractors, subcontracts relating to prime contracts, and purchase orders relating to United States Government contracts:

| COUNT | APPROXIMATE DATE | AMOUNT OF PAYMENT TO JOSEPH THAT INCLUDED KICKBACK TO ALLEN | A&A CHECK NUMBER |
|---|---|---|---|
| TWO | October 12, 2011 | $19,595 | 12279 |
| THREE | November 18, 2011 | $3,468 | 12363 |
| FOUR | December 26, 2011 | $2,000 | 12429 |
| FIVE | February 23, 2012 | $8,733 | 12531 |

## COUNTS SIX THROUGH TWELVE

[18 U.S.C. § 1341]

A. INTRODUCTORY ALLEGATIONS

17. The Grand Jury incorporates by reference and realleges paragraphs 1 through 10 and paragraph 13 of the Indictment as though set forth in their entirety here.

B. THE SCHEME TO DEFRAUD

18. Beginning in or about 2010, and continuing through on or about February 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant A&A and defendants HENDERSON and A&A, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim Boeing and the United States as to material matters, and to obtain money and property of Boeing and the United States by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

19. The fraudulent scheme operated, in substance, in the following manner:

    a. After BSIS prohibited defendant A&A from receiving BSIS purchase orders due to work quality and performance issues, defendant HENDERSON, Allen, and Joseph agreed to have defendant A&A do business with BSIS using Nace as a "front" in order to circumvent the prohibition on defendant A&A receiving BSIS purchase orders.

    b. Defendant HENDERSON recruited Soto, doing

9

business as Nace, who agreed to submit bids on behalf of defendant A&A in order to deceive BSIS as to who manufactured the products supplied under the BSIS purchase orders.

   c. Defendant HENDERSON recruited Mitchell, who agreed to assist in deceiving BSIS as to who would manufacture the products supplied under the BSIS purchase orders.

   d. At the direction of defendant HENDERSON, Soto and Mitchell attended a meeting with BSIS employees at defendant A&A's facility and misrepresented to BSIS that the facility was actually operated by Nace.

   e. Defendant HENDERSON and defendant A&A misrepresented to BSIS that Nace and Soto were bidding on purchase orders and supplying the respective products.

   f. Defendant HENDERSON obtained a copy of Soto's signature, which defendant A&A used to obtain purchase orders relating to Boeing contracts with the United States Government through Nace.

   g. Defendants HENDERSON and A&A did not disclose to BSIS that they were doing business through Nace.

   h. Allen awarded defendant A&A approximately $275,000 in purchase orders through Nace.

   i. BSIS paid defendant A&A with checks sent via U.S. Mail.

C. USE OF THE MAILS

20. On or about the dates set forth below, within the Central District of California, and elsewhere, defendants HENDERSON and A&A, for the purpose of executing and attempting

10

to execute the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service or by a private or commercial interstate carrier, according to the directions thereon:

| COUNT | APPROXIMATE DATE | ITEM MAILED |
|---|---|---|
| SIX | September 2, 2011 | A check from Boeing to Nace in the amount of approximately $17,025 |
| SEVEN | October 12, 2011 | A check from Boeing to Nace in the amount of approximately $52,800 |
| EIGHT | October 13, 2011 | A check from Boeing to Nace in the amount of approximately $21,012 |
| NINE | November 7, 2011 | A check from Boeing to Nace in the amount of approximately $8,100 |
| TEN | January 9, 2012 | A check from Boeing to Nace in the amount of approximately $15,250 |
| ELEVEN | February 13, 2012 | A check from Boeing to Nace in the amount of approximately $14,850 |
| TWELVE | February 15, 2012 | A check from Boeing to Nace in the amount of approximately $32,285 |

## COUNT THIRTEEN

[18 U.S.C. §§ 1028A, 2(b)]

21. The Grand Jury incorporates by reference and realleges paragraphs 1 through 10 and 17 through 20 of the Indictment as though set forth in their entirety here.

22. On or about November 4, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENDERSON, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name of Cesar Soto, which was used on a quote from Nace to Boeing in the amount of $15,250, during and in relation to mail fraud, a felony violation of Title 18, United States Code, Section 1341, as charged in Count Ten of this Indictment.

COUNT FOURTEEN

## COUNT FOURTEEN

[18 U.S.C. §§ 1028A, 2(b)]

23. The Grand Jury incorporates by reference and realleges paragraphs 1 through 10 and 17 through 20 of the Indictment as though set forth in their entirety here.

24. On or about November 4, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENDERSON, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the name of Cesar Soto, which was used on a quote from Nace to Boeing in the amount of $14,850, during and in relation to mail fraud, a felony violation of Title 18, United States Code, Section 1341, as charged in Count Eleven of this Indictment.

## COUNT FIFTEEN

[18 U.S.C. § 371]

A. **INTRODUCTORY ALLEGATIONS**

25. The Grand Jury incorporates by reference and realleges paragraphs 1 through 10 of the Indictment as though set forth in their entirety here.

B. **OBJECT OF THE CONSPIRACY**

26. Beginning in or about 2007, and continuing through in or about February 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants HENDERSON and A&A, together with Joseph and others known and unknown to the Grand Jury, combined, conspired, and agreed with each other to knowingly and intentionally defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of a government agency, namely, the Internal Revenue Service ("IRS"), by deceitful and dishonest means.

C. **THE MANNER AND MEANS OF THE CONSPIRACY**

27. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

    a. In or about 2007, at the request of Joseph, defendant HENDERSON directed defendant A&A to issue IRS Forms 1099 to Joseph for less than the amounts defendant A&A had paid Joseph for his work as an outside sales representative, which was taxable income.

    b. Joseph used the false IRS Forms 1099s that were issued to him as the basis for his filed 2007, 2008, 2009, and

2010 federal income tax returns, each of which understated his taxable income.

      c.    The loss to the United States resulting from defendants HENDERSON and A&A's impeding, impairing, obstructing, and defeating the lawful functions of the IRS with respect to Joseph's false 2007, 2008, 2009, and 2010 tax returns was approximately $90,000.

D.    OVERT ACTS

28.    In furtherance of the conspiracy, and to accomplish its object, defendants HENDERSON and A&A, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in Los Angeles County, within the Central District of California, and elsewhere:

      Overt Act No. 1: In or about January 2008, at defendant HENDERSON's direction, defendant A&A issued IRS Form 1099 representing that it had paid Joseph approximately $83,990 in 2007, even though it had paid him approximately $208,209 that year, which included taxable income in excess of $83,990.

      Overt Act No. 2: In or about January 2009, at defendant HENDERSON's direction, defendant A&A issued IRS Form 1099 representing that it had paid Joseph approximately $79,142 in 2008, even though it had paid him approximately $170,399 that year, which included taxable income in excess of $79,142.

      Overt Act No. 3: In or about January 2010, at defendant HENDERSON's direction, defendant A&A issued IRS Form 1099 representing that it had paid Joseph approximately $74,000

in 2009, even though it had paid him approximately $137,070 that year, which included taxable income in excess of $74,000.

Overt Act No. 4: In or about January 2011, at defendant HENDERSON's direction, defendant A&A issued IRS Form 1099 representing that it had paid Joseph approximately $85,014 in 2010, even though it had paid him approximately $157,111 that year, which included taxable income in excess of $85,014.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c)
and 18 U.S.C. § 982(a)(2)(A)]

29.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendants ALFRED HENDERSON and A&A FABRICATION AND POLISHING, INC. (collectively, the "defendants") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(a)(2)(A), in the event of any defendant's conviction under Count One or any of Counts Six through Twelve of this Indictment.

30.  Defendants shall forfeit to the United States the following property:

   a.  All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in Count One or any of Counts Six through Twelve of this Indictment; and

   b.  A sum of money equal to the total value of the property described in subparagraph a.  For each of Count One and Counts Six through Twelve for which more than one defendant is found guilty, each such defendant shall be jointly and severally liable for the entire amount forfeited pursuant to that Count.

31. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the money and property described in the preceding paragraph if, as the result of any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

///

///

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                              A TRUE BILL

                              /S/
                              _____
                              Foreperson

STEPHANIE YONEKURA
Acting United States Attorney

*Scott Garringer*
*Deputy Chief, Criminal Division for:*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

STEPHEN A. CAZARES
Assistant United States Attorney
Acting Chief, Major Frauds Section

JILL T. FEENEY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

STEPHEN I. GOORVITCH
DAVID L. KIRMAN
Assistant United States Attorneys
Major Frauds Section